# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

*UNITED STATES OF AMERICA*

*v.*

*1. Shaina Rain Marshall, and*
*2. Shaelene Shawnelle Jackson*

**CRIMINAL COMPLAINT**
(Electronically Submitted)

CASE NUMBER: MJ-25-04408-PCT-CDB

I, Robert Richardson, III, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

**On or about 13 September 2025, in the District of Arizona, the defendants, SHAINA RAIN MARSHALL and SHAELENE SHAWNELLE JACKSON, did knowingly, intentionally, and recklessly forcibly assault, resist, oppose, impede, intimidate and interfere with W.B., a person designated under Title 18 United States Code, Section 1114 as a federal law enforcement officer for the Bureau of Indian Affairs at the time, while W.B. was engaged in and on account of performance of official duties, and such acts involved physical contact with W.B., in violation of Title 18, United States Code, Section 111(a)(1).**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

REVIEWED BY: *AUSA Dimitra Sampson*

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.**

Robert Richardson III, Special Agent, FBI
Complainant's Name and Title

_Complainant's Signature_   9/13/25
Date

X Sworn by Telephone

_____
Date/Time

Flagstaff, Arizona
City and State

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.09.24 17:48:59 -07'00'

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

- 1 -

**CC: USM & PTS**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALLY SUBMITTED AFFIDAVIT**

I, FBI Special Agent Robert Richardson III, state under oath as follows:

1.  I am employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since January 2021. I am currently assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency, and charged with the investigation of crimes occurring on (among other places) the Havasupai Indian Reservation within the District of Arizona. My duties include the investigation of violent crimes occurring within Indian Country as well as similar crimes within the District of Arizona.

2.  The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as information provided to me by other law enforcement officers and/or witnesses including those listed herein. Because this affidavit is made to establish probable cause, I have not listed every fact known regarding this investigation.

## Introduction

3.  This case involves physical assaults that occurred on federal law enforcement officers in the village of Supai, Arizona, which is on the Havasupai Indian Reservation in the District of Arizona. The assaults occurred on September 13, 2025, involving Bureau of Indian Affairs (BIA) Law Enforcement Officer W.B. (Officer W.B.) and BIA Law Enforcement Officer Lieutenant Erik Crazy Bear (Lt.

Crazy Bear). At the time of the assaults, Officer W.B. and Lt. Crazy Bear were in uniform and working in their official capacities as federal law enforcement officers on the Havasupai Indian Reservation in the District of Arizona.

4. The assaults were committed by Shaelene Shawnelle Jackson (Jackson) and Shaina Rain Marshall (Marshall) both Indian females. Officer W.B. and Lt. Crazy Bear arrested Jackson and Marshall for tribal charges of intoxication and/or other violations of tribal law. During the arrest and transport of Jackson and Marshall to the BIA holding facility in Supai, Jackson and Marshall assaulted Officer W.B. Marshall was noncompliant to verbal commands given by officers and physically fought them during her arrest. Marshall continued to kick Officer W.B. during transport.

5. Also during transport, Jackson turned around from the front seat of the utility terrain vehicle (UTV) and struck Officer W.B. with her hands, which were in handcuffs to the front of her body. When Officers arrived at the Supai Holding Facility with Marshall and Jackson, Marshall assaulted a female corrections officer by kicking her, as well as Lt. Crazy Bear during processing.

6. The assaults were in violation of 18 U.S.C. § 111(a)(1), Assault on a Federal Law Enforcement Officer with Physical Contact.

### Investigation/Probable Cause

7. On September 14, 2025, Officer W.B. contacted FBI SA Cameron Mizell by phone regarding the assaults involving physical contact on himself, Lt. Crazy Bear, and a female corrections officer that occurred in the late evening on

September 13, 2025. SA Mizell was advised that officers were kicked and punched by Jackson and Marshall while they were being arrested and/or during transport.

8.  On September 14, 2025, Officer W.B. provided an incident report authored by him to SA Mizell detailing the events that occurred on September 13, 2025, including specifics about the assaults. Officer W.B. also provided the video from his body-worn camera. In summary, and based upon a review of the report and the video, the following occurred:

   a. Marshall and Jackson were arrested along with another resident, R.G. by Lt. Crazy Bear and Officer W.B. for intoxication and/or other violations of tribal law. R.G. was placed in handcuffs without incident. Jackson was passed out intoxicated on the front lawn. When she was awakened by Officer W.B., she was originally placed in handcuffs without incident. R.G and Jackosn were secured in a utility terrain vehicle (UTV) for transport to the Supai Holding Facility.

   b. Marshall was inside the home when Jackson and R.G. were arrested. Marshall came out of the residence with another resident, L.H., who was holding a child. L.H. was told to go back inside. Marshall demanded to know why Jackson was being arrested. Marshall was advised by Officer W.B. that Jackson was being arrested for intoxication. Marshall began arguing with Officer W.B. about the legality of the arrest for intoxication on their own property. Officer W.B. advised Marshall that the arrest was lawful, but Marshall

continued to argue with Officer W.B. Officer W.B. advised Marshall to go back inside, or she may be arrested as well. Marshall refused to go inside.

c. Officer W.B. could see that Marshall was also intoxicated. Officer W.B. reached for Marshall's arms to put her in handcuffs. Marshall resisted and stated, "I was not going to resist but now I am!" Marshall continued to resist being handcuffed and was taken to the ground by the officers to gain compliance. Marshall threatened the officers that she would tell her father and get them fired. She continually fought both officers when they were trying to handcuff her.

d. Once officers had Marshall handcuffed, she was escorted to the UTV and officers tried to sit her down in the back seat next to R.G. for transport. Marshall began kicking Officer W.B. in the chest. Officer W.B. put Marshall down on her side in the back of the UTV and restrained her on the seat next to R.G. by holding her down by the legs.

e. Lt. Crazy Bear drove the UTV to transport the three arrestees to the Supai Holding Facility. Jackson was in the front seat next to Lt. Crazy Bear. R.G. was in the rear on the driver's side. Marshall was on her side pinned down by Officer W.B. in the back seat. During the drive to the facility, Marshall continued to scream, and kick at Officer W.B. Marhsall kicked Officer W.B. in the chest causing the body camera

affixed to Officer his agency-issued body armor to become detached. The body camera became lodged in the floorboards in the UTV.

f. While being transported in the front seat, Jackson turned and punched Officer W.B. who was in the rear seat restraining Marshall. Officer W.B. turned toward Jackson and that's when Jackson punched Officer W.B. in his chest with both fists while handcuffed in the front of her body. Lt. Crazy Bear had to restrain Jackson's arms with his right hand while driving the UTV with his left. Officer W.B. used his right hand to block and/or restrain Jackson from continuing to hit him while using his weight and left had to block/restrain Marshall from kicking him. Both Marshall and Jackson were screaming and yelling at the officers the entire ride.

g. Once at the Supai Holding Facility, Marshall kicked the female corrections officer, and slapped her hands. Jackson threw a plastic water bottle at her during the booking process. Marshall made threats of self-harm and told the officers that they would all be fired because it would be their fault. Marshall was put in a safety smock and booked into a cell.

9. On September 16, 2025, SAs Richardson and Mizell interviewed R.G. at his residence in Supai, Arizona. In summary, R.G. provided the following information:

a. R.G. admitted he had been drinking the day of his arrest and stated that Marshall and Jackson were drinking with him watching the fight that was playing that night. He admitted that they had been making a lot of noise at the end of the fight which caused the officers to respond to the residence.

b. R.G. stated that the officers had trouble getting Marshall and Jackson arrested. R.G. explained that Jackson was heavily intoxicated, passed out on the lawn initially, and admitted to the officers that she was intoxicated once she was awakened. Jackson was initially compliant.

c. Marshall came out of the house and was arguing with the officers and saying a lot of unnecessary things. Marshall threated to tell her father, a prominent member of the tribe, and get the officers fired. R.G. opined that everything would have been fine had Marshall stayed in the house or gone back inside when officers told her to. Instead, Marshall refused to comply with the officers and resisted being handcuffed. R.G. described Marshall resisting by using her legs to continually kick and push away from the officers. Officer W.B. tried to load Marshall in the UTV for transport, and Marshall resisted being secured in the vehicle. Officer W.B. put Marshall on her side and restrained her with his weight. Marshall was on her side with her head near R.G.'s lap. She continued to kick at Officer W.B. during the ride to the jail.

   d. Jackson became more verbal and noncompliant when she saw that Marshall was being restrained and officers were using force to gain compliance. Jackson started repeatedly calling Officer W.B. a rapist. R.G. did not witness Jackson strike any of the officers, but he was trying to keep to himself and not cause any additional problems.

   e. R.G. was asked if the officers treated Marshall and Jackson fairly and he replied that the officers handled the situation fairly given the circumstances and how Marshall and Jackson were behaving.

   f. R.G. stated that things escalated unnecessarily because of how Marshall and Jackson behaved and reacted. In his opinion, their response to the situation was immature. R.G. went home the next day after court and was feeding his horses at the time of the interview. Both Marshall and Jackson had to post bond to be released.

10. On September 22, 2025, Officer W.B. provided the video from Lt. Crazy Bear's body-worn camera. Based upon a review of the video available from Lt. Crazy Bear's body-worn camera, the content of the video is consistent with the above-mentioned facts.

## Conclusion

12. Based upon the information set forth above, I submit that there is probable cause to believe that Marshall and Jackson violated federal law by assaulting Officer W.B., with physical contact, in violation of 18 U.S.C. § 111(a)(1).

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 1, 2025

Robert Richardson III, Special Agent, FBI

__X__ Sworn by Telephone

Date/Time: _____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2025.09.24 17:48:00 -07'00'

Camille D. Bibles
United States Magistrate Judge